RECEIVED
3/19/2024
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

FILED
5/16/2024
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

In the United States District Court
Northern District of Illinois

Pg 1 of 23

Ronald McKinney

v.

JUDGE JOHNSTON
MAGISTRATE JUDGE SCHNEIDER

Case #

24CV50111

United States Of America

## Complaint Under 28 U.S.C. 1346 (b) Federal Tort Claims Act (FTCA)

### Introduction

Comes now the plaintiff, pro se, Filing this Civil action under the FTCA 28 U.S.C. 1346(b), alleging neligence on the part of FBOP staff at the United States Penitentiary in Thomson, Illinois (USP Thomson) and a breach of the FBOP's "duty of care" under 18 U.S.C. 4042.

### Parties

1. The plaintiff Ronald McKinney #81679083 is a Federal (FBOP) prisoner. No aliases. The plaintiff is currently confined at USP Allenwood, P.O. Box 3000, White Deer, PA 17887.

2. Defendant United States Of America is the Federal Government.

## All Previously Filed Lawsuits

3. None. The plaintiff has not filed any lawsuits prior to this one.

## Statement Of Claim / Facts
### First Incident of Restraint Use

4. Around August - September 2021 I was housed in the Special Management Unit at USP Thomson. During this time my cell-mate became angry because he was not allowed to take a shower and he refused to give his breakfast tray back to staff.

5. Staff customarily uses forcefull methods to subdue non-compliant inmates to recover food trays held by prisoners.

6. Staff ordered that a Use of Force "Team" be used to subdue plaintiff and his cellmate in order to recover the food tray. Plaintiff was compliant in returning his food tray to staff.

7. When the Team of officers arrived at plaintiff's cell, the Officers ordered plaintiff's cell mate to submit to restraints. A camcorder was being used at the time, by officers, to record the use of force incident. Before submitting to restraints, plaintiff's cell-mate swallowed an excessive amount of unidentified pills in sight of officers and recorded on the hand-held camera.

8. A prisoner's witnessed swallowing of excessive amounts of pills is generally treated as a suicide attempt, and in most instances the prisoner is transported to an outside Medical Facility.

9. After swallowing the pills, plaintiff's Cell-mate submitted to had restraints, as did the plaintiff.

10. Plaintiff's Cell-Mate was briefly placed in physical restraints for approximately one hour before he was transported to outside medical for treatment of a possible pill overdose.

11. As a result of this incident, the plaintiff was wrongfully placed in hard restraints (cuffs, belly chain, and "black-box" around metal cuffs), and simultaneously strapped into a restraint chair.

12. Plaintiff asked why he was being placed in restraints and was told by staff that since his cell-mate was going to outside Medical, one of them had to wear the restraints. Plaintiff was in compliance the entire time and was wrongfully placed in torturously tight physical restraints for the actions of his cell-mate.

13. There has been much recent Media coverage concerning USP Thomson's Misuses of force and abuses of inmates. These news articles and investigations have even dubbed the scarring from over tight restraints as "Thomson tattoos".

14. Plaintiff was never given an incident report concerning this incident and therefore there was no justification for placing plaintiff in restraints for his cell-mate's ~~actions.~~

actions

15. Plaintiff was kept in restraints for approximately 16 hours. The ~~hadnd~~ handcuffs were purposely placed to tight.

16. Plaintiff was initially placed in "hard" restraints (e.g. steel cuffs, steel leg irons, Metal restraints, Metal belly chain, etc.) in violation of FBOP Policy 5566.06 "Use Of Force And Application Of Restraints" and Code of Federal Regulations (CFR) § 552.20 - 552.24
    FBOP Policy dictates proceedures for restraining an inmate for extended periods of time:

    "When authorized, staff must use only that amount of Force necessary to gain control of the inmate, to protect and ensure the safety of inmates, staff and others"

    "Restraints will be applied only for purposes outlined in policy in authorized Methods" PS5566.06 § 2 (g)

    "Force May not be used to punish an

inmate" P5566.06, $ 6(b)

" Restraint equiptment or devices (e.g. handcuffs) may not be used in any of the following ways: (1) As a method of punishing an imate [...] (3) In a manner that causes unnecessary physical pain or extreme discomfort [...] prohibited uses of restraints include, but are not limited to: [...] unnecessarily tightness, or improperly applied restraints [...] When it is necessary to use continued restraints after any use of force incident, hard restraints (i.e, steel handcuffs and leg irons) are to be used only after soft restraints have proven ineffective, or a past history of ineffectiveness exists [...] (4) to secure an inmate to a fixed object, such as a cell door or cell grill, except as provided in § 552.24 [CFR] " (emphasis added)

" If an inmate is released temporarily from four-point restraints for any reson; e.g., to use the toilet, consumption of food or beverage, etc., without continuing disruptive or agressive behavior, the leiutenant must consider authorizing lesser restraints after a non-disruptive break, the Lieutenant, must document the reasons for the action. "

17. FBOP Policy 5566.06, and corresponding CFR, are currently unconstitutional in that they do not require the mounting of cameras in areas where inmates are kept in restraints, nor the use of handheld camcorders. Currently in the FBOP, restraints are used for the physical torture of inmates. The lack of required camera useage encourages this physical torture and abuse while in restraints. Correction and Medical staff falsify documents to wrongly justify prolonged restraints and to conceal the level of physical pain the prisoner experiences while in these restraints.

18. The fact is that "hard" restraints hurt, especially when they are placed too tight for hours (or days) at a time. Prison staff knows this and have virtually abandoned the use of "soft" restraints which are still required by FBOP policy/CFR.
The unjustified use of hard restraints without first using soft restraints proves the malicious intent of FBOP personnell; intent to torture. These socalled law-abiding citizens, including prison medical personnell, come to work

daily and witness the intentional physical torture of human beings and work "overtime" to falsify documents to cover this fact.

19. Plaintiff was psycally tortured during this incident of restraint usage. The cuffs were placed too tight. ~~After~~ After approximately 3 hours, the pain was excruciating, reaching level 10 (on scale of 1-10). Plaintiff expressed this extreme pain to medical staff during medical evaluations. Any indication that the plaintiff suffered less than level 10 pain, in medical records, is a falsification by medical staff.

<u>Second Incident Of Restraint Usage</u>

20. On 2/7/2022 the plaintiff was again placed in prolonged restraints after a "calculated Use of force" (CUOF) against plaintiff by USP Thomson Staff.

21. On 2/7/2022 plaintiff became upset

because his food tray was missing food and did not contain proper portions. Plaintiff requested a replacement tray but staff refused to provide one. Out of justifiable frustration, plaintiff refused to return the inadequate food tray to prison staff. Staff felt that a CUOF was required to recover food tray.

22. FBOP policy 5566.06 requires that staff use a camcorder to record all CUOF incidents, whenever staff has time to plan or "calculate" the use of force.

23. Before the CUOF against plaintiff on 2/7/2022, staff arrived at plaintiff's cell door with required camcorder. While the camcorder was recording, the plaintiff swallowed an excessive number of unidentified pills as well as metal objects.
   Policy requires that when staff witnesses an inmate suicide attempt by ingesting pills, the inmate must be immediately transported to an outside medical facility for monitoring and/or treatment.

24. Medical staff later falsified plaintiff's medical records to show that plaintiff's ingestion of an excessive number of pills was unwitnessed by prison staff. ~~that~~ This forging of plaintiff's medical records was done to prevent plaintiff from recieving outside medical care after ingesting pills, and metal. X-rays of plaintiff's abdomen later revealed metal objects in plaintiff's digestive tract.

25. While "The Use Of Force (UOF) Team" was situated outside of plaintiff's cell door, they ordered plaintiff to submit to hand restraints and plaintiff refused. At this time chemical weapons (pepper spray) was used on the plaintiff in violation of a current medical order to not use chemical weapons on plaintiff due to a diagnosis of asthma.

26. FBOP Policy/Program Statement Forbids the use of chemical weapons against individuals with certain medical conditions, including asthma, without medical clearance

27. The plaintiff was removed from his cell and placed in "hard" ~~restraints~~ restraints without first using soft restraints, in violation of FBOP policy described in paragraph 16 of this complaint.

28. Restraints were purposely placed too tight (cuffs, shackles, and belly chain) in order to physically torture the plaintiff.

29. After chemical weapons were used on the plaintiff, he began to experience complications from his asthma to include lightheadedness and extreme difficulty breathing and shortness of breath. When the plaintiff was removed from his cell he collapsed due to his asthma symptoms and complications, and was punished for his medical condition by being upgraded to four-point restraints.

30. Plaintiff was physically tortured in restraints for approximately 18 hours.

31. While in restraints, plaintiff began

to experience extreme physical symptoms, from his ingestion of pills and metal, to include nausea and vomiting of blood, excruciating stomach pain, trouble remaining conscious, back pain that seemed to radiate from kidneys.

32. Upon medical evaluation plaintiff told the nurse that his symptoms were severe and worsening with time. Medical staff falsified plaintiff's medical records to downgrade/minimize the level of pain and sickness experienced by the plaintiff; failing to document plaintiff's most severe physical symptoms and complaints, including vomiting blood.

33. It should be noted that during all incidents of restraints used on the plaintiff in this complaint, he was not afforded the opportunity to be released from restraints for bathroom breaks. Plaintiff was forced to defecate and urinate on himself while in restraints. Medical staff falsified records to show that plaintiff was given bathroom breaks when he actually wasn't.

34. Although records were falsified to appear as if plaintiff was allowed bathroom breaks when he wasn't, FBOP policy requires the Lieutenant to explain why an inmate is put back in restraints after a non-disruptive bathroom break. If these bathroom breaks had been conducted as claimed in the falsified documents, plaintiff should have been released from restraints at that time due to non-disruptive behavior while temporarily let out of restraints. (see paragraph 16 for policy)

35. During plaintiff's time in hard four-point restraints, the cuffs, leg irons and belly chain were placed too tight purposely to torture the plaintiff. Medical records, and likely restraint documentation, was falsified to minimize plaintiff's level of pain and suffering. At all times plaintiff expressed to medical staff that his pain and suffering was severe, level 10 pain.

36. FBOP Policy/Program statement 5566.06 section 10 (F) requires constant medical supervision of a prisoner in Four-Point restraints for over 8 hours.

37. After plaintiff ingested pills and metal, and was left in four-point restraints for over 8 hrs., he was not under supervision of Medical staff.

## Third Incident of Restraint Use

38. On 12/28/2022 the plaintiff was again placed in restraints after a disagreement with prison staff.

39. Prior to being placed in ambulatory restraints on 12/28/2024, plaintiff refused to submit to restraints and chemical weapons were again used on the plaintiff in violation of the standing (No O/c spray/chemical weapons) Medical order.

40. In this instance, Multiple chemical weapons were used: O/c spray, O/c "bombs," and paint-ball guns with O/c pellets.

41. By this time, staff was well aware of plaintiff's asthma and the No O/c Chemical Weapons Medical order. The use of these weapons in violation of the Medical order shows Malicious intent on the part of SMU prison staff.

42. Plaintiff's medical record dated 12/28/2022, written by Heinsen, D. R.N. (Registered Nurse), claims that "IM [inmate] was cleared for munitions. A rebulizer was available and ready to use if needed."
It was wrong and negligent on the part of Nurse Heinsen to violate the Medical order and give clearance for use of Chemical Munitions on the plaintiff. That is, if Heinsen made the ultimate decision; if not the deciding Medical personnell are liable.

43. Plaintiff was then left in ambulatory restraints for an excessive amount of time (over 48 hours) (as shown by Medical records)

44. Medical records were Falsified to Minimize plaintiff's pain while in restraints. Plaintiff suffered severe asthma related symptoms from this use of Chemical weapons.

16 of 23

45. Restraints were purposely placed too tight in order to torture the plaintiff as was customary at USP Thomson at the time. The Court must only look to the plethora of similar Complaints against USP Thomson, and other FBOP Facilities, to see that FBOP personnell has done away with the Soft restraints (in violation of policy) and uses hard restraints for the sole purpose of torture for those who dare to challenge their unjust treatment.

One would certainly believe that such a civilized and advanced country as this one has long since abandoned the brutal methods of "human-breaking" and physical torture. But to the contrary, this same torture is ignored by those who are sworn to prevent and punish such vulgar violations of the Constitution and treatises of the United States.

46. There is nothing "De Minimus" about being physically tortured for hours and days at a time. Why would torturing a prisoner be ignored as de Minimus? Because no bones are broken? Flesh removed from the bone? ~~Throught~~ Throughout history,

Humans have evolved ways of torturing other humans without leaving traces of physical injury. For example, "Water-boarding" which was used by the CIA (reportedly) to force information out of spies and other prisoners. With waterboarding, the victims face is covered with a large cloth and water is poured over victims mouth and nose to prevent breathing. This gives the victim the sensation of drowning, and could kill the victim if the water is not stopped in time.

Is water boarding de minimus? Will that be the next ~~tor~~ture ecouraged against American prisoners out of a failure to properly address restraint-torture for what it is?

47. The plaintiff's physical sufferings were ~~enourm~~ enormous while in the hard restraints, so much so that Nurse Bungard documented that plaintiff's restraints had to be loosened on 12/30/2022 for "Comfort". Even ~~while~~ while documenting this, Bungard has falsified this medical record entry to down-play the level of suffering experienced by the plaintiff.

48. Medical staff has tried to make it appear that suffering and abrasions from overly tight restraints are the plaintiff's fault by stating "Inmate ecouraged and educated to not Manipulate restraints by pushing them up his wrists". Statements such as these are meant to mislead any future reviewer of the medical record.

When restraints/Cuffs are applied with the "black-box" device (which in itself is a device of torture), they have a tendancy to work their way up the wrists toward the elbows, biting into the flesh the more they move up, causing more pain. If staff sees the inmate attempting to push the cuffs down, back to the wrist area where they belong, they fraudently document that the prisoner is "Manipulating the restraints."

In reality it is the prison staff who must be educated to follow FBOP policy in the application of soft restraints. Even if this were so, staff would simply falsify documentation to create a falsified need for hard restraints. Mandatory cameras mounted in restraint areas are the only solution to stop the torture.

## Exhaustion Of Administrative Remedies

49. Plaintiff has exhausted his administrative remedies with respect to all claims and defendants herein by way of filing three administrative tort claims with the FBOP North Central Regional Office, which were assigned the following claim Numbers:
A.) TRT-NCR-2022-05714
B.) TRT-NCR-2022-05783

## Claims For Relief

50. Placing the plaintiff in prolonged restraints approximately between August - September 2021 (actual dates to be ascertained via discovery) without justification (i.e. no incident report), and applying the restraints overly tight, in violation of BOP policy, to torture, constituted the tort of Assault and Battery and violated the FBOP's duty of Care under 18 U.S.C. 4042, as well as Negligence.

51. Placing the plaintiff in hard restraints prior to the use of soft restraints in violation of FBOP policy, in all described

incidents of restraint use, Constituted the torts of negligence and Assault and battery and violated the FBOP's duty of care under 18 U.S.C. 4042.

52. All described incidents of use of Chemical Munitions against the plaintiff, in violation of the standing Medical order to not use such chemical weapons on the plaintiff Constituted the torts of assault and battery, Negligence, and violated the FBOP's duty of Care Under 18 U.S.C. 4042.

53. Medical staff giving clearance for the use of Chemical weapons against the plaintiff, despite asthma diagnosis, Constituted the torts of Medical negligence/Malpractice and violated the FBOP's duty of Care under 18 U.S.C. 4042.

54. Medical Staff's Falsification of plaintiff's Medical records, with the purpose of Covering up and Minimizing plaintiff's level of suffering (physical and mental) while in restraints, Constituted the torts of Medical negligence/Malpractice and violated

the FBOP's duty of care under 18 U.S.C. 4042.

55. Prison staff's applying restraints in an overly-tightened fashion with intent to cause physical torture and suffering, in violation of FBOP policy, constituted the torts of negligence, Assault and Battery, and violated the FBOP's duty of care under 18 USC 4042.

56. Medical staff's Falsifying of plaintiff's Medical records to state that plaintiff's pill overdose was unwitnessed, when in actuality this overdose was recorded on camera by the Use of Force Team at plaintiff's cell door, for the purpose of denying plaintiff the policy-required outside Medical attention, constituted the torts of Medical negligence/Malpractice and violated the FBOP's duty of care under 18 U.S.C. 4042.

57. Medical staff's Failure to provide constant Medical supervision after 8 hours in four-point restraints, as required by FBOP policy, while the plaintiff suffered severe symptoms from pill overdose and ingestion of Metal objects, constituted the torts of Medical

Negligence/Malpractice and violated the FBOP's duty of care under 18 U.S.C. 4042.

58. The plaintiff experienced extreme mental/emotional anguish as a result of these allegations which have resulted in mental/emotional injury for which the plaintiff also seeks damages. Failing to give plaintiff bathroom breaks and ~~food~~ while in restraints violated 18 USC 4042.

## Relief Requested

A. Award Monetary damages against the Defendant.

B. Issue a declatory judgement stating that prison staff's actions, as described in this complaint constituted the torts of negligence, Medical negligence/Malpractice, assault and battery, and violated the FBOP's duty of care under 18 U.S.C. 4042, as stated in Claims for Relief.

C. Grant other such relief as it may appear that plaintiff is entitled

23 of 23

The plaintiff declares, pursuant to 28 U.S.C. 1746, that the forgoing is true and correct.

Respectfully Submitted,

3-13-24
Date

Ronald McKinney #81679-083
USP Allenwood
P.O. Box 3000
White Deer, PA 17887